UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS VELASQUEZ,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3817-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting his May 22, 2026 redetention, without first receiving notice or an opportunity to be heard, violated his Fifth Amendment due process rights. Dkt. 1. He seeks release from custody, a return of his personal property, and injunctive relief related to any future redetention and the Government's use of GPS monitoring. *Id.* at 18. He included a sworn declaration to support his petition. Dkt. 1-2. Respondents filed a return to the petition, Dkt. 5, together with supporting declarations from their counsel Shaun M. Pehl, Dkt. 6 ("Pehl Decl."), and U.S. Department of Homeland Security ("DHS") Deportation Officer Freite Subero Arias, Dkt. 7 ("Subero Arias Decl."). Petitioner filed a traverse in reply. Dkt. 9.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth herein.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela, who first entered the United States on April 29, 2022, without lawful admission, near Eagle Pass, Texas. Subero Arias Decl., ¶¶ 4-5. He was apprehended by Border Patrol, who subsequently paroled Petitioner into the United States "[d]ue to lack of detention capacity." *Id.* ¶ 5. There are no documents related to Petitioner's parole in the record. Petitioner informed Border Patrol that he would be residing in Charlotte, Florida. Subero Arias Decl., ¶ 5.

Officer Subero Arias asserts that on April 30, 2022, ICE's Office of Enforcement and Removal Operations ("ERO") "determined that Petitioner was eligible for the Intensive Supervision Appearance Program ("ISAP") and enrolled him in the Alternatives to Detention ("ATD") program. *Id.* ¶ 6. Petitioner was purportedly provided a "G-56 Call in Letter" and directed to report to the closest ERO field office. *Id.* There are no documents related to Petitioner's ISAP or ATD enrollment in the record.

Officer Subero Arias further asserts that "ERO Miami made several unsuccessful attempts to contact Petitioner." Subero Arias Decl., ¶ 7. ERO thereafter issued Petitioner a Notice to Appear ("NTA"), via mail, which placed him into removal proceedings. *Id.*; *see* Pehl Decl., ¶ 2, Ex. B.

On December 27, 2023, Petitioner reported to ERO in Miramar, Florida and was released on an Order of Release on Recognizance ("OREC"), which included the requirement that Petitioner report annually "via Compliance Assistance Reporting Terminal ('CART')." Subero Arias Decl., ¶ 11. There are no documents related to Petitioner's OREC or CART reporting in

the record, but Officer Subero Arias asserts that Petitioner was scheduled for his first reporting date on December 27, 2024. *Id.*

Before Petitioner's first reporting date, he appeared in immigration court for a hearing on July 8, 2024. *Id.* ¶ 12. He requested a continuance of his immigration proceedings to seek counsel. *Id.* Officer Subero Arias asserts that "[i]t does not appear Petitioner ever filed a [change of address] form with the immigration court." *Id.*

On October 17, 2024, Petitioner was arrested and issued a citation in Marchall County, Iowa for "Driving While License Denied, Suspended, Cancelled or Revoked[.]" *Id.* ¶ 13. He was convicted on January 8, 2025. *Id.* ¶ 15.

Officer Subero Arias asserts that, because Petitioner failed to report to ICE via CART on December 27, 2024, as required by his OREC, ICE deactivated Petitioner from CART reporting on February 21, 2025. *Id.* ¶¶ 14, 16.

On May 20, 2026, Petitioner was arrested and charged in Allamakee County, Iowa for "Driving While Barred[.]" *Id.* ¶ 17. The following day, ERO learned of Petitioner's arrest and lodged an immigration detainer with the Allamakee County Jail, where Petitioner was being held. *Id.* ¶ 18. On May 22, 2026, Petitioner was transferred to immigration custody. *Id.* ¶ 19. It appears the Allamakee County charge remains pending.

On June 15, 2026, Petitioner sought a bond hearing with the Omaha, Nebraska immigration court. *Id.* ¶ 20. Three days later, the immigration court denied bond based on lacking jurisdiction. *Id.* ¶ 21. Petitioner appealed that denial to the Board of Immigration Appeals, which remains pending. *Id.* ¶ 22. Petitioner does not challenge the bond denial here.

Petitioner was transferred to the NWIPC on July 19, 2026, where he remains detained. *Id.* ¶ 24.

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his May 22, 2026 redetention without pre-deprivation process as unconstitutional when assessed under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 1 at 8-17. Respondents acknowledge that courts within this District have found that noncitizens redetained under similar circumstances were entitled to pre-deprivation process under the Due Process clause of the Fifth Amendment. Dkt. 5 at 4 (citations omitted). Respondents also acknowledge that, should this Court apply the same reasoning from those cases, it "will likely find the re-detention of Petitioner required notice and a pre-deprivation hearing to comport with procedural due process." *Id.* Instead of distinguishing those cited cases, Respondents note a general "disagreement" with their outcome and apparently seek to incorporate arguments advanced in the Government's briefing filed in *Sierra Soto v. Bondi*, C26-0652-BAT, 2026 WL 972731, at *6-7 (W.D. Wash. Apr. 10, 2026) and *Randhawa v. Noem*, C26-0461-BAT, 2026 WL 628299, at *3 (W.D. Wash. Mar. 6, 2026). *Id.* However, Respondents did not provide the Government's briefing filed in those cases or otherwise discuss the arguments advanced.

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. Due process generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention on procedural due process grounds. *See, e.g., E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

First, Petitioner had a liberty interest in his continued freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. When Petitioner was released shortly after entering the United States, he acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D.

Wash. 2025). Here, the record demonstrates Petitioner was paroled into the United States, and subsequently authorized to remain released under an OREC. This factor favors Petitioner.

As for the second factor, there was a high risk of erroneous deprivation and value in additional safeguards. It is undisputed that Petitioner was redetained without first receiving notice of his redetention or an opportunity to be heard. *See generally* Dkt. 5. When Petitioner was paroled into the United States, and later authorized to remain released under an OREC, the Government necessarily first determined that he posed neither a danger to the community, nor a flight risk. *See* 8 C.F.R. §§ 212.5(b) (parole), 236.1(c)(8) (OREC release). To then unilaterally revoke that release, without providing any individualized, pre-deprivation process to determine whether Petitioner now poses a risk, came with a high risk of error. *See Alfaro Siguenza v. Hernandez*, 2026 WL 2587980, at *4 (W.D. Wash. Aug. 27, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1323).

Finally, Respondents do not identify a governmental interest furthered by Petitioner's redetention. *See* Dkt. 5 at 4-5 (acknowledging the *Mathews* test but omitting any application to Petitioner's redetention). At most, Respondents assert that Petitioner's conviction and pending charge for driving-related offenses "constitute a material change in circumstances since his initial release and demonstrate that he has not been fully compliant with the terms of his OREC." *Id.* at 5. As noted, the terms of Petitioner's OREC are not in the record. Regardless, while it may be true that Petitioner was not fully compliant with the conditions of his release, Respondents do not articulate why that necessarily required redetaining Petitioner and forgoing notice and an opportunity to respond. Nor do Respondents connect Petitioner's recent criminal history, some not yet adjudicated, to a risk of flight or danger to the community—the two regulatory goals addressed by civil immigration detention, a process itself assumed to be "nonpunitive in purpose

and effect." *See Zadvydas*, 533 U.S. at 690. The Court therefore finds this third factor favors Petitioner.

Because all *Mathews* factors weigh in Petitioner's favor, habeas relief is warranted. Although Respondents did not apply the test to Petitioner's circumstances, they nonetheless argue that any appropriate remedy is a bond hearing. Dkt. 5 at 6. The Court recently rejected the same argument in *Kesete v. Mullin*, 2026 WL 3269260, at *4 (W.D. Wash. Oct. 30, 2026) and similarly does so here. On the current record, the Court does not find a post-deprivation bond hearing would sufficiently cure the deprivation of liberty. *See id.* (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). Instead, Petitioner shall be released from custody.

Finally, Petitioner seeks injunctive relief related to any future redetention and the use of GPS monitoring. Dkt. 1 at 16, 18. While Respondents redetained Petitioner without adequate process on May 22, 2026, it does not necessarily follow that he remains at risk of a similar unlawful redetention in the future. Petitioner's emphasis that other "people like [him]" are being subject to unlawful detention without adequate process is insufficient, without more, to demonstrate an individualized "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." Dkt. 1 at 16; *see U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). As for Petitioner's request to prohibit the use of GPS monitoring, he does not develop a factual record to support that request. Accordingly, Petitioner's request for permanent injunctive relief is denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition in part, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** under the conditions of the OREC and ATD program in effect at the time of his

redetention. Respondents shall file a status report with the Court within **forty-eight (48) hours** confirming that Petitioner has been released. Petitioner's request for permanent injunctive relief is DENIED. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Dated this 4th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge